IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———————

**ALFREDO PORRAS**,

    Plaintiff,

    v.                                       Civ. No. 10-565 BB/WPL

**QWEST CORPORATION,**

    Defendant.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Qwest Corporation's motion for summary judgment (Doc. 17). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's motion should be *DENIED*.

### Summary of Relevant Facts

Plaintiff is a 59-year-old Hispanic man who worked for Defendant from June 9, 1973 to September 11, 2008. Doc. 1, pp. 2-3. Beginning in 2002, Plaintiff allegedly began to notice that his younger, white colleagues were being treated more favorably than he by their supervisors. This allegedly disparate treatment extended to Defendant's professional performance evaluation of its employees. Plaintiff alleges that Defendant applied its performance standards prejudicially, thereby favoring younger employees and white employees and negatively affecting Plaintiff. Doc. 1, p. 7. Defendant terminated Plaintiff for "unsatisfactory" job performance. Doc. 1, p. 11. He was terminated just one month before he could accept Defendant's company buyout and early retirement offer. Doc. 1, p. 13.

On November 6, 2009, Plaintiff filed an employment discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race and national origin discrimination by Defendant (Doc. 17-1). The EEOC issued Plaintiff a Right to Sue ("RTS") letter on February 25, 2009 for his race/national origin complaint (Doc. 17-2). Then on July 6,

2009, Plaintiff filed a second employment discrimination complaint with the EEOC, this time

alleging age discrimination on the part of Defendant (Doc. 17-3).  The EEOC issued a RTS letter

for Plaintiff's second discrimination claim on March 15, 2010 (Doc. 17-4).  Plaintiff then filed

the instant suit pursuant to 42 U.S.C. § 1981 and 29 U.S.C. § 623(A) (the Age Discrimination in

Employment Act or "ADEA") on June 11, 2010.

**Jurisdiction**

Plaintiff brings this suit pursuant to 42 U.S.C. § 1981 and 29 U.S.C. § 623(A). The Court

has jurisdiction over the suit pursuant to 42 U.S.C. § 1331 ("federal question").

**Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting

Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts

showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith*, 475 U.S.

574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the

mere allegations in the pleadings but must show, at a minimum, an inference of the existence of

each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir.

2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the

evidence, the Court must draw reasonable inferences in favor of the non-moving party.

*Matsushita*, 475 U.S. at 587.

**Discussion**

**I.      Age Discrimination**

Plaintiff alleges that Defendant willfully violated his rights under the ADEA, and he seeks

"injunctive, declaratory relief and liquidated damages" from Defendant.  Doc. 1, p. 13.

2

Defendant does not deny it violated Plaintiff's rights under the ADEA but states that Plaintiff did

not bring this suit within 90 days of receiving his RTS letter.  Doc. 17, p. 1.  Defendant correctly

notes that plaintiffs must file ADEA claims within 90 days of receiving a RTS letter from the

EEOC.  29 U.S.C. § 626(e).

Plaintiff filed two claims with the EEOC, the first alleging race/national origin

discrimination and the second alleging age discrimination.  Plaintiff received a RTS letter on the

first claim February 25, 2009 (Doc. 17-2).  He received a RTS letter for the second claim March

15, 2010 (Doc. 17-4).  Defendant argues that the ADEA 90-day filing requirement began to run

when Plaintiff received the *first* RTS letter on February 25, 2009.  Doc. 17, p. 6.  However,

Plaintiff argues that there were no allegations of age discrimination in the first EEOC complaint,

only in the second, so the ADEA filing requirement did not begin to run until he received the

RTS letter for the second charge, i.e., March 15, 2010.  Doc. 26, p. 5.

A. Claim Preclusion

Defendant argues that Plaintiff's second EEOC claim is precluded by his first, and so the

filing deadline began to run with the first RTS letter.  Doc. 17, p. 7.  Claim preclusion, also called

res judicata, occurs when "a final judgment on the merits of an action precludes the parties . . .

from relitigating issues that were or could have been raised in that action."  *Pelt v. Utah*, 539

F.3d 1271, 1281 (10th Cir. 2008) (quoting  *Wilkes v. Wyo. Dep't of Employment Div. of Labor

Standards*, 314 F.3d 501, 503-04 (10th Cir.2002)).  Although Plaintiff did not raise age

discrimination allegations in his first complaint, Defendant argues that he could have done so.

Doc. 17, p. 8.

The EEOC is not a judicial but an administrative body.  *See Butler v. Kempthorne*, 532

F.3d 1108, 1111 (10th Cir. 2008) (observing that the plaintiff had the option of filing an

administrative complaint with the EEOC as one way of exhausting his administrative remedies).

"The United States Supreme Court has 'long favored application of the common-law doctrines of

collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of

administrative bodies that have attained finality.'" *Brockman v. Wyoming Dep't of Family Servs.*,

342 F.3d 1159, 1166 (10th Cir. 2003) (quoting *Astoria Fed. Sav. & Loan Assoc. v. Solimino*, 501

U.S. 104, 107 (1991)).  In New Mexico, "courts apply collateral estoppel to administrative

hearings provided: "(1) the party against whom collateral estoppel is asserted was a party . . . to

the original action; and (2) the two cases concerned the same ultimate issue of fact, which was (a)

actually litigated, and (b) necessarily determined in the first suit."  *Salguero v. City Of Clovis*,

366 F.3d 1168, 1173 (10th Cir. 2004) (internal quotations omitted).  However, certain federal

laws, the ADEA among them, abrogate the common-law rule of administrative res judicata.

*Brockman*, 342 F.3d at 1166.  The ADEA "carries an implication that the federal courts should

recognize no preclusion by state administrative findings with respect to age-discrimination

claims."  *Astoria Fed. Sav. & Loan Assoc.,* 501 U.S. at 110.

     Even if the ADEA does not abrogate claim preclusion in this case, the RTS letters are not

final judgments on the merits of Plaintiff's discrimination claims.  On the contrary, the letters

informed Plaintiff that the EEOC *did not reach a conclusion* as to his discrimination claims and

that he had a right to pursue those claims in federal or state court.  *See* Doc. 17-2; Doc. 17-4.  The

EEOC specifically stated that, by closing the investigations of Plaintiff's claims, they did "not

certify that [Defendant] is in compliance with the statutes."  Doc. 17-2.  As such, neither RTS

could be construed as a final determination of Plaintiff's claims.  Thus, Plaintiff's second

discrimination charge with the EEOC is not precluded from suit by the doctrine of res judicata.

     B. Policy Preclusion

     In the alternative, Defendant argues there are strong policy reasons for precluding

Plaintiff's age discrimination claim from suit in this Court.  Doc. 17, p. 9.  Specifically,

Defendant states that Plaintiff's two EEOC claims constitute "serial filing," and that he filed the

second charge only to "circumvent the ninety-day time line" to file an ADEA claim.  Doc. 17, p. 10.

    "If the claimant fails to file suit within the ninety-day window [for filing ADEA claims after receiving a RTS letter from the EEOC], the lapsed claims are not revived by including them in a second EEOC charge and restarting the process."  *Brown v. Unified Sch. Dist. 501, Topeka Public Schs.*, 465 F.3d 1184, 1186 (10th Cir. 2006).  However, earlier acts of discrimination, even those already contained in a complaint or lawsuit, will not preclude a later lawsuit for "related acts that would support suit on their own."  *Id*. at 1187.  "The existence of past acts and the employer's prior knowledge of their occurrence does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."  *Id*. (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  Indeed, plaintiffs must file separate actions for discriminatory acts not included in the original claim, because related acts of discrimination that are not encompassed in the claim require their own separate charge.  *Keeler v. Cereal Food Processors*, 250 Fed.Appx. 857, 861 (10th Cir. 2007) (unpublished opinion).  So, Plaintiff's second EEOC claim would be properly filed if it alleged discriminatory acts that were independent of the acts listed in his first EEOC charge and the new allegations independently supported a claim for discrimination.  *See Brown,* 465 F.3d at 1187.

    Plaintiff's first EEOC claim alleges acts of discrimination based on race and national origin.  Doc. 17-1.  His specific allegations are: 1.) Defendant's QJD standards were not applied to him the same way they were applied to Anglo employees; 2.) In December of 2007 he sent a letter complaining of the unfair application of QJD standards and was then given a warning of dismissal in May of 2008; 3.) On September 11, 2008 he was terminated from his job while Anglo employees were allowed to retire.  Doc. 17-1.  Plaintiff's second EEOC claim concerns age discrimination.  Doc. 17-3.  In it, he alleges that: 1.) Defendant placed him on an Employee

Development Plan but did not provide training or assistance; 2.) Younger technicians were falsifying records in order to improve QJD ratings but not being reprimanded; 3.) He did not have access to computers, wireless internet or the like, but the younger technicians had such access; 4.) He was prohibited from receiving DSL repair training and therefore from receiving lucrative DSL repair assignments while younger technicians, who had not received the training either, *did* receive DSL repair assignments; 5.) He was given undesirable repair assignments that younger technicians refused to take; and 6.) Defendant continues to retain younger technicians who do not meet QJD standards, though it terminated Plaintiff.  Doc. 17-3, p. 2.

Plaintiff's second complaint contains allegations of discriminatory acts that are independent from those in the first.  *Compare* Doc. 17-3 *to* Doc. 17-1.  The second complaint refers to training, computer access, and work assignments that were not mentioned in the first complaint.  And, although he lists his termination in both complaints, he provides different discriminatory bases in each.  In the first, Plaintiff alleges he was terminated while similarly situated "Anglo" employees were allowed to retire.  Doc. 17-1.  In the second, he alleges that he was terminated while similarly situated younger employees were retained.  Doc. 17-3, p. 3.  The second complaint is not a rehashing of the allegations in the first; rather, it contains separate allegations that, on their own, support his claim of age discrimination.  Therefore, his second claim does not violate any policy against serial filing.

This case is distinguishable from *Soso Liang Lo v. Pan American World Airways, Inc.*, where the court determined that the plaintiff's second EEOC charge was not actionable because it contained "exactly the same facts" as her first.  787 F.2d 827, 828 (2nd Cir. 1986).  As discussed in detail above, Plaintiff's second EEOC claim contains allegations that are separate and independent from the allegations in the first claim.  Plaintiff's second claim is actionable, and he timely brought this suit within the 90-day window of receiving a RTS letter from the EEOC on that claim.

6

Defendant argues that, as a matter of common sense and efficiency, individuals should not be allowed to file multiple claims regarding the same period of alleged discrimination. Defendant notes that multiple claims require extra investigative time on the part of the EEOC and additional responses from the complained-of companies.  While this may be true, Defendant has not provided any case law to support its argument that individuals should file only one discrimination claim per period of alleged discrimination.  Nor has the Court found any legal support for that argument.  While it may be the best practice to file a single claim for multiple alleged acts of discrimination, that is simply not required of plaintiffs.  Furthermore, the Court notes that, at least at the inception of discrimination cases, many plaintiffs proceed pro se.  Also, filing charges with the EEOC and other administrative bodies is not as burdensome as bringing a lawsuit.  For these reasons, along with the lack of legal foundation, the Court will decline to adopt Defendant's proposed policy of requiring plaintiffs to allege all acts of discrimination in a single complaint.  The existing policies against serial filing and against filing charges that are dependent on another charge are sufficient to preserve efficiency and fairness in administrative charges.

C. Substantive Challenges

Defendant has made only procedural challenges to Plaintiff's ADEA claim of age discrimination.  As discussed above, those challenges are without merit.  Plaintiff properly filed a second claim with the EEOC, and he timely filed the instant suit after receiving a RTS letter from the EEOC on the second claim.  Since Defendant has not challenged or addressed in any other way the substance of Plaintiff's ADEA claims, the Court will not evaluate the substance of the claims.

## II.   Race and National Origin Discrimination

Plaintiff also brings a claim pursuant to 42 U.S.C. § 1981, wherein he alleges that Defendant discriminated against him because of his race and national origin.  Defendant did not

make any challenge to this claim in its moving papers.  The Court notes that Plaintiff's § 1981

claim regarding termination and conditions of employment carries a four-year statute of

limitations.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004) (holding that

employment discrimination claims related to events occurring after the employment relationship

was formed necessarily were brought pursuant to the amendments of 42 U.S.C. § 1981 and

therefore had a four-year statute of limitations[1]).  Plaintiff filed the instant suit less than four

years after he was terminated.  As such, Plaintiff's 42 U.S.C. § 1981 claim was timely brought.

Since Defendant did not challenge any other aspect of that claim, and the Court finds no other

jurisdictional reason to challenge the claim, it survives Defendant's motion for summary

judgment.

### Conclusion

Pursuant to the foregoing, the motion for summary judgment will be *DENIED*.

### O R D E R

*For the above stated reasons, the Court hereby DENIES Defendant's motion for summary*

*judgement (Doc. 17).*

Dated this 9th day of May, 2011.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

---

[1] Employment discrimination claims that arise before a contract relationship is formed, such as failure to hire, use the forum state's statute of limitations for personal injury actions. *Brown*, 465 F.3d at 1188.  Employment discrimination claims occurring after hiring or the formation of an employment contract fall under the 1991 amendments to 42 U.S.C. § 1981, and so they bear the federal four-year statute of limitations established by 28 U.S.C.A. § 1658. *Jones*, 541 U.S. at 373, 382.